UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br>This Document Relates to All Cases<br>Judge Karen Spencer Marston |
| Tonya Ralph,<br>*Plaintiff*,<br>v.<br>Novo Nordisk, Inc., and<br>Novo Nordisk A/S<br>*Defendants*. | COMPLAINT AND JURY DEMAND<br>Case No. 2:25-cv-01376 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff files this Complaint pursuant to CMO No. 14, the Direct Filing Order, and is to be bound by the rights, protections, privileges, and obligations of that Direct Filing Order and other Orders of the Court. Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the Eastern District of Tennessee, as Plaintiff's designated venue ("Original Venue"). Plaintiff makes this selection based upon the following factors:

Plaintiff currently resides in Kingsport, Sullivan County, Tennessee.

Plaintiff used Defendants' products in Kingsport, Sullivan County, Tennessee.

- ☐ The Original Venue is a judicial district in which Defendant resides, and all Defendants are residents of the State in which the district is located (28 U.S.C. § 1391(b)(1));

- **X** The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred (28 U.S.C.§ 1391(b)(2)): Use of Defendants' products, including Ozempic, in Kingsport, Sullivan County, Tennessee.

- ☐ There is no district in which an action may otherwise be brought under 28 U.S.C. § 1391, and the Original Venue is a judicial district in which Defendant is subject to the Court's personal jurisdiction regarding this action (28 U.S.C. § 1391(b)(3)).

## JURISDICTION AND VENUE

1. This Court has jurisdiction because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

2. This Court also has jurisdiction because Plaintiff's claims arise out of Defendants' transaction of business (and tortious acts) within the State of Tennessee, and by virtue of Defendants' substantial, continuous, and systematic contacts with the State of Tennessee. 2023 Tennessee Code, § 20-2-201.

3. The Original Venue is the proper venue because Plaintiff used Ozempic, and was injured by Ozempic, in the Eastern District of Tennessee. 28 U.S.C. § 1391(a).

4. Venue is also proper in this district because Defendants conduct business in this district, and a substantial part of

the acts and omissions giving rise to this complaint occurred in this district. 28 U.S.C. § 1391(b).

## NATURE OF THE CASE

5. Plaintiff, Tonya Ralph, brings this case against Defendants, Novo Nordisk Inc. and Novo Nordisk A/S, for the injuries caused by his prescription use of Ozempic.

6. Ozempic is a prescription drug designed, manufactured, sold, and distributed by Defendants.

7. Plaintiff suffered injuries, serious physical pain, emotional distress, and incurred medical expenses solely because Ozempic was used as prescribed.

8. Ozempic, also known as semaglutide, is an injectable medication used for the treatment of diabetes and weight-loss.

9. Ozempic stimulates insulin production, reduces glucose production, and lowers blood-sugar levels.

10. Ozempic is a GLP-1 receptor agonist (GLP-1RA).

11. The risk of gastroparesis is common to the entire class of GLP-1RA drugs, a fact that should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of gastroparesis associated with Ozempic.

12. Defendants never warned Plaintiff of the risk of gastroparesis (stomach paralysis), or the complications associated with the condition, which are caused by the use of Ozempic as prescribed.

13. Plaintiff suffers from gastroparesis, which cause food intolerance, nausea, emesis, heartburn, flatulence, indigestion, diarrhea, jaundice, and severe pain.

14. The risk of Non-Arteritic Anterior Optic Neuropathy (NAION), is common to the entire class of GLP-1RA drugs, a fact that should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of NAION associated with Ozempic.

15. Defendants never warned Plaintiff of the risk of NAION associated with the use of Ozempic.

16. Plaintiff suffers from vision loss as a result of her NAION diagnosis and use of Ozempic.

## PLAINTIFF

17. Plaintiff is a United States citizen and resident of Gatlinburg, Tennessee.

18. Plaintiff was prescribed Ozempic for the treatment of diabetes and weight loss from January 2023 until March 2024.

19. Ozempic caused Plaintiff to suffer stomach paralysis, gastric obstruction, pain, suffering, emotional distress, vision loss, and significant medical expense.

## DEFENDANTS

20. Defendant, Novo Nordisk Inc., is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey. Novo Nordisk Inc. has conducted business and derived substantial revenue within the State of Tennessee.

21. Defendant, Novo Nordisk A/S, is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark. Novo

Nordisk A/S has conducted business and derived substantial revenue within the State of Tennessee.

22. Defendants' acts and omissions (as described in this complaint) were carried out by its agents, servants, employees, and owners, who acted in the course and scope of their respective roles as agents, servants, employees, or owners.

**FIRST CAUSE OF ACTION**
**(NEGLIGENT FAILURE TO WARN)**

23. Defendants manufacture Ozempic and market the drug in the State of Tennessee.

24. In Tennessee, "actions for or on account of personal injury ... from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product" are "product liability actions" subject to the Tennessee Products Liability Act ("TPLA"). *Tenn. Code Ann.* § 29-28-102(6); *Nolen v. C.R. Bard Inc.*, 533 F. Supp. 3d 584, 590 (M.D. Tenn. 2021).

25. Unter the TPLA, an adequate warning is, "one calculated to bring home to a reasonably prudent user of the product the nature and the extent of the danger involved in using the product.*" Nolen,* 533 F. Supp. 3d at 590.

26. Defendants failed to market Ozempic with adequate warning of its dangers, including NAION and stomach paralysis, which renders Ozempic defective.

27. Plaintiff, a reasonably prudent user of Ozempic, received no warning regarding the nature and the extent of the danger involved with the use of Ozempic.

28. Specifically, neither Plaintiff or his prescribing physician were warned of the risks of NAION, gastroparesis (stomach paralysis), or complications associated with these conditions could result from use of Ozempic as prescribed.

29. Defendants had a duty to exercise reasonable care in the design, research, testing, manufacture, marketing, supply, promotion, advertising, packaging, sale, and distribution of Ozempic into the stream of commerce; Including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as gastroparesis, NAION, and their comorbid conditions.

30. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic Prescribed to Plaintiff and used by Plaintiff.

31. The Ozempic prescribed and given to Plaintiff was delivered, without substantial change, in the same condition it was produced, manufactured, sold, distributed, and marketed by Defendants.

32. Defendants knew, or should have known, that Ozempic was unreasonably dangerous because it contained no adequate warning of the risks of gastroparesis, NAION, or the comorbidities associated with these conditions.

33. Despite the fact that Defendants knew, or should have known, that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and sell Ozempic to consumers, including Plaintiff, without

adequate warning of the risks associated with gastroparesis and NAION.

34. Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician, without adequate warning of the risks associated with gastroparesis and NAION.

35. Defendants could foresee, or should have foreseen, that consumers like Plaintiff would suffer injury because of their failure to provide adequate warning of the risks associated with gastroparesis and NAION.

36. Given its increased safety risks, Ozempic was not fit for treating diabetes or obesity, which are the ordinary purposes for which it was intended.

37. Given its increased safety risks, Ozempic did not meet the reasonable expectations of Plaintiff, an ordinary consumer.

38. At all relevant times, Plaintiff used Ozempic as prescribed by his physician and in the manner intended by Ozempic's instructions for use.

39. The Ozempic given to Plaintiff was defective, due to inadequate warnings or instructions, because Defendants knew or should have known that the product created a risk of serious and dangerous injuries, like gastroparesis and NAION, and Defendants failed to adequately warn of these injuries.

40. Defendants also failed to provide adequate warning to other users and prescribers of the product, and continued to improperly advertise, market, and promote Ozempic.

41. Ozempic's instructions for use and labels were inadequate because they failed to adequately warn of all possible adverse side effects causally associated its use, including the

increased risks of gastroparesis and gastric output obstructions.

42. The labels for Ozempic were also inadequate because they failed to adequately warn that Ozempic was not tested for risks involving gastroparesis, NAION, or their associated conditions.

43. Further, the labels for Ozempic were inadequate because they failed to adequately warn of all possible adverse side effects related to Ozempic.

44. The instructions for use and labels for Ozempic were inadequate because they failed to adequately warn of the severity and duration of adverse effects and did not accurately reflect the symptoms or severity of the side effects.

45. Plaintiff had no way to determine that Defendants' warnings were inadequate and his reliance upon their warnings was thus reasonable.

46. Plaintiff's prescribing physician had no way to determine that Defendants' warnings were inadequate and his physician's reliance upon Defendants' warnings were thus reasonable.

47. Upon information and belief, had Plaintiff's prescribing physician been warned of the increased risks of gastroparesis and NAION associated with Ozempic, then they would not have prescribed Ozempic, or at least would have provided Plaintiff with adequate warning as a learned intermediary.

48. Had Plaintiff been warned of the increased risks of gastroparesis and NAION associated with Ozempic,

Plaintiff would not have used Ozempic or suffered from gastroparesis or NAION.

49. Defendants are thus liable for damages to Plaintiff for the design, marketing, promotion, distribution, and sale of Ozempic because it is an unreasonably dangerous product.

50. Because Ozempic is a defective product, one which created an unreasonable risk to Plaintiff's health, Defendants are therefore liable for Plaintiff's injuries.

51. Defendants' failure to warn Plaintiff about Ozempic was willful, wanton, and reckless.

52. Defendants' failure to warn Plaintiff about Ozempic was a substantial factor in causing Plaintiff's injuries.

53. Plaintiff suffered permanent, severe injuries, physical pain, mental anguish, diminished enjoyment of life, and the need for lifelong medical treatment because of Defendants' acts, omissions, and failure to issued adequate warnings.

## SECOND CAUSE OF ACTION
## (STRICT PRODUCT LIABILITY FAILURE TO WARN)

54. Defendants had a duty to exercise reasonable care in the design, research, testing, manufacturing, marketing, supply, promotion, advertising, packaging, sale, and distribution of Ozempic.

55. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic used by Plaintiff.

56. Ozempic was prescribed and sold to Plaintiff without substantial change to the condition in which it was produced by Defendants.

57. Defendants knew or should have known that Ozempic was unreasonably dangerous, even when used as prescribed, but failed to warn of the risks of gastroparesis and gastric obstruction.

58. Defendants continued to market, distribute, and sell Ozempic to consumers, including Plaintiff, without adequate warning.

59. Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician, without adequate warning.

60. Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings about the risks of gastroparesis and gastric obstruction.

61. At all relevant times, given its increased safety risks, Ozempic was not fit for the treatment of diabetes or obesity, the ordinary purposes for which it was intended.

62. At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

63. At all relevant times, Plaintiff was using Ozempic for the purposes and in the manner normally intended by his prescribing physician and Ozempic's instructions for use.

64. The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including gastroparesis and gastric output obstruction, as well as other severe and personal injuries

which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

65. The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and warnings because Defendants knew or should have known of the risks of serious side effects, including gastroparesis and NAION, as well as other severe and permanent health consequences from Ozempic, but failed to provide adequate warnings to users and prescribers of the product, and continued to improperly advertise, market, and promote their product Ozempic.

66. The labels for Ozempic were inadequate because they failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic, including the increased risk of gastroparesis and gastric output obstruction.

67. The labels for Ozempic were inadequate because they failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and gastric output obstruction.

68. The labels for Ozempic were inadequate because they failed to warn and/or adequately warn of all possible adverse side effects concerning any failure or malfunction related to the ordinary use of Ozempic.

69. The label for Ozempic was inadequate because it did not warn, or adequately warn, of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the possible side effects.

70. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician were inadequate because Defendants failed to warn, or adequately warn, of all possible adverse side effects causally associated with the use of Ozempic, including the increased risks of gastroparesis and its sequelae.

71. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician were inadequate because Defendants failed to warn, or adequately warn, that Ozempic had not been sufficiently (or adequately) tested for safety risks, including gastroparesis and its sequelae.

72. Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings, which made his reliance upon the warnings reasonable.

73. Plaintiff's prescribing physician had no way to determine the truth behind the inadequacies of Defendants' warnings, and their reliance upon Defendants' warnings was thus reasonable.

74. Upon information and belief, had Plaintiff's prescribing physician been warned of the increased risks of gastroparesis and NAION causally associated with Ozempic, then the prescribing physician would not have prescribed Ozempic, or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic, so as to allow Plaintiff to make an informed decision regarding the use of Ozempic.

75. Upon information and belief, had Plaintiff's prescribing physician been warned that Ozempic had not been sufficiently or adequately tested for safety risks, including gastroparesis, NAION, or their sequelae, the prescribing

physician would not have prescribed Ozempic, or would have provided Plaintiff with adequate warnings regarding the lack of adequate testing of Ozempic, to allow Plaintiff to make an informed decision regarding the use of Ozempic.

76. Had Plaintiff been warned of the increased risks of gastroparesis and gastric output obstruction, which are causally associated with Ozempic, Plaintiff would not have used Ozempic, nor suffered from gastroparesis and gastric output obstruction.

77. Had Plaintiff been warned that Ozempic had not been sufficiently or adequately tested for safety risks, including gastroparesis and NAION, Plaintiff would not have used Ozempic or suffered gastroparesis and gastric output obstruction.

78. Had Plaintiff been warned of the increased risks of gastroparesis and its sequelae causally associated with Ozempic, Plaintiff would have informed his physician that he did not want to take Ozempic.

79. By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution, and sale of Ozempic as an unreasonably dangerous product.

80. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers, and to Plaintiff in particular, and Defendants are therefore liable for the injuries Plaintiff sustained.

81. Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and reckless conduct.

82. The inadequate warnings for Defendants' drug Ozempic were a substantial factor in causing Plaintiff's injuries.

83. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, and diminished enjoyment of life.

84. As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires, or will require, more medical care.

## THIRD CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY)

85. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as described in this complaint.

86. At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic was safe to treat 2 diabetes, reduce cardiovascular risk, and promote weight loss and assured them it did not carry an increased risk of gastrointestinal complications, including, but not limited to, gastroparesis.

87. The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's labels, website, advertisements, promotional materials, and through other statements.

88. As a result of Defendants' express warranties, Plaintiff's prescribing physician(s) was induced to prescribe Ozempic to Plaintiff, and Plaintiff was induced to use Ozempic.

89. At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic based upon their express warranties.

90. At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic based upon their express warranties.

91. At all relevant times, Defendants knew or should have known that Ozempic was unreasonably dangerous because of its increased risk of gastroparesis and its sequelae, especially when the drug was used in the form and manner as provided by Defendants.

92. At all relevant times, Defendants knew or should have known that Ozempic had not been sufficiently and/or adequately tested for safety.

93. The unreasonably dangerous characteristics of Ozempic were beyond those which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

94. The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

95. At the time Ozempic left Defendants' control, Ozempic did not conform to Defendants' express warranties because Ozempic was not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or to promote weight loss, in that it was causally associated with increased risks of gastroparesis and its sequelae.

96. The express warranties made by Defendants regarding the safety of Ozempic were made with the intent to induce Plaintiff to use the product and/or Plaintiff' prescribing physician(s) to prescribe the product.

97. Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff to use Ozempic and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Ozempic.

98. Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, relied on the express warranties of Defendants identified herein.

99. Had Defendants not made these express warranties, Plaintiff would not have used Ozempic and/or, upon information and belief, Plaintiff's prescribing physician(s) would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

100. Had Plaintiff been warned of the increased risk of gastroparesis causally associated with Ozempic, Plaintiff

would not have used Ozempic and and/or suffered from gastroparesis and its sequelae.

101. Had Plaintiff been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, Plaintiff would not have used Ozempic and/or suffered gastroparesis and its sequelae.

102. Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

103. Defendants' breach of express warranty was a substantial factor in causing Plaintiff's injuries.

104. Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

105. As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

106. By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' Ozempic drug.

107. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further

alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FOURTH CAUSE OF ACTION**
**(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)**

108. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic prescribed to and used by Plaintiff.

109. Ozempic was expected to and did reach the usual consumers, handlers, and persons encountering said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

110. At all relevant times, Defendants impliedly warranted Plaintiff, Plaintiff's prescribing physician(s), and the medical community that Ozempic was of merchantable quality and safe and fit for its ordinary purpose.

111. At all relevant times, Defendants knew or should have known that Ozempic was unreasonably dangerous because of its increased risk of gastroparesis and its sequelae, especially when the drug was used in the form and manner as provided by Defendants.

112. At all relevant times, Defendants knew or should have known that Ozempic had not been sufficiently and/or adequately tested for safety.

113. At the time Ozempic left Defendants' control, Ozempic did not confirm to Defendants' implied warranty and was unfit for its ordinary purpose because Defendants failed to

provide adequate warnings of the drug's causal association with increased risk of gastroparesis and its sequelae.

114. At all relevant times, Defendants reasonably anticipated and expected that prescribing physician(s), such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic for use by their patients to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk, and/or to promote weight loss.

115. At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic for its ordinary purpose.

116. Despite the fact that Defendants knew or should have known that Ozempic causes unreasonably dangerous injuries, such as gastroparesis and its sequelae, Defendants continued to market, distribute, and/or sell Ozempic to consumers, including Plaintiff, without adequate warnings.

117. The unreasonably dangerous characteristics of Ozempic was beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the

118. ordinary knowledge common to the public as to the drugs' characteristics.

119. The unreasonably dangerous characteristics of Ozempic was beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

120. Plaintiff reasonably relied on Defendants' implied warranty of merchantability relating to Ozempic's safety and efficacy.

121. Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Ozempic was of merchantable quality and safe and fit for its intended use.

122. Upon information and belief Plaintiff's prescribing physician(s) relied on Defendants' implied warranty of merchantability and fitness for the ordinary use and purpose relating to Ozempic.

123. Upon information and belief Plaintiff's prescribing physician(s), reasonably relied upon the skill and judgment of Defendants as to whether Ozempic was of merchantable quality and safe and fit for its intended use.

124. Had Defendants not made these implied warranties, Plaintiff would not have used Ozempic and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Ozempic, and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

125. Defendants herein breached the aforesaid implied warranty of merchantability because the drug Ozempic was not fit for its intended purposes.

126. Defendants' breaches of implied warranty of merchantability were a substantial factor in causing Plaintiff's injuries.

127. As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish,

including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

128. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**(FRAUDULENT CONCEALMENT)**

129. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as described in this complaint.

130. Defendants knew or should have known that Ozempic had not been adequately or sufficiently tested for safety.

131. Defendants knew or should have known that Ozempic was unreasonably dangerous because of the increased risk of gastroparesis and its sequelae, especially when the drug was used in the form and manner as provided by Defendants.

132. Defendants had a duty to disclose material information about Ozempic to Plaintiff and Plaintiff's prescribing physician(s), namely that Ozempic is causally associated with increased risk of gastroparesis and its sequelae, because Defendants have superior knowledge of the drug and its dangerous side effects, this material information is

not readily available to Plaintiff or Plaintiff's prescribing physician(s) by reasonable inquiry, and Defendants knew or should have known that Plaintiff and Plaintiff's prescribing physician would act on the basis of mistaken knowledge.

133. Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing physician(s), Plaintiff, the medical and healthcare community, and the general public this material information.

134. Although the Ozempic labels lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Ozempic patients, it does not mention gastroparesis as a risk of taking Ozempic, nor do they disclose gastroparesis as a chronic condition that can result as a consequence of taking Ozempic.

135. Defendants' promotional website for Ozempic similarly does not disclose that Ozempic is causally associated with increased risk of gastroparesis.

136. Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult Type 2 diabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic for treatment of Type 2 Diabetes.

137. Defendants knew or should have known that Plaintiff's prescribing physician(s) would prescribe, and Plaintiff would use Ozempic without the awareness of the risks of

serious side effects, including gastroparesis and its sequelae.

138. Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic, as set forth herein.

139. Upon information and belief, Plaintiffs prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Ozempic.

140. Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of gastroparesis causally associated with Ozempic, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate information regarding the increased risk of gastroparesis causally associated with Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

141. Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

142. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained

therein, when making the decision to purchase and/or consume Ozempic.

143. Had Plaintiff been informed of the increased risks causally associated with Ozempic, Plaintiff would not have used Ozempic and/or suffered gastroparesis and its sequelae.

144. Defendants' fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

145. As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

146. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SIXTH CAUSE OF ACTION
## (FRAUDULENT MISREPRESENTATION)

147. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as described in this complaint.

148. At all relevant times, Defendants knew or should have known that Ozempic had not been adequately and/or sufficiently tested for safety.

149. At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic, including gastroparesis and its sequelae.

150. At all relevant times, Defendants knew or should have known that Ozempic was not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or promote weight loss, given its increased risk of gastroparesis.

151. Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic.

152. Defendants represented affirmatively and by omission on television advertisements and on the label of Ozempic that Ozempic was a safe and effective drug for treatment of adults with Type 2 diabetes, despite being aware of increased risks of gastroparesis and its sequelae causally associated with using Ozempic.

153. Defendants were aware or should have been aware that its representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

154. Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in

order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult Type 2 diabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic for treatment of Type 2 Diabetes.

155. Upon information and belief that Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

156. Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic to Plaintiff.

157. Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of gastroparesis causally associated with Ozempic, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and/or would have provided Plaintiff with adequate information regarding safety of Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

158. Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, they would not

have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic.

159. Plaintiff had no way to determine the truth behind Defendant's false and/or misleading statements, concealments and omissions surrounding Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

160. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Ozempic.

161. Had Plaintiff been told of the increased risk of gastroparesis and its sequelae causally associated with Ozempic, Plaintiff would not have used Ozempic and/or suffered gastroparesis and its sequelae.

162. Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Ozempic for safety risks, including gastroparesis and its sequelae, Plaintiff would not have used Ozempic and/or suffered gastroparesis and its sequelae.

163. As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are

permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

164. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SEVENTH CAUSE OF ACTION
## (NEGLIGENT MISREPRESENTATION)

165. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as described in this complaint.

166. Defendants knew or should have known that Ozempic had not been adequately or sufficiently tested for safety.

167. Defendants knew or should have known of the serious side effects of Ozempic, including gastroparesis and its sequelae.

168. Defendants had a duty to disclose material information about Ozempic to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic is causally associated with increased risk of gastroparesis and its sequelae, because Defendants held a special expertise with respect to Ozempic, Plaintiff, as a user of Ozempic, had a special relationship of trust with Defendants, and Defendants

knew that their statements regarding the risks causally associated with Ozempic would be relied on by Ozempic users.

169. Defendants knew or should have known of the serious side effects of Ozempic, including gastroparesis and its sequelae.

170. Defendants made material misrepresentations and omissions and/or concealments to Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic.

171. Defendants represented affirmatively and by omission on television advertisements and on the label of Ozempic that Ozempic was a safe and effective drug for treatment of adults with Type 2 diabetes, despite being aware of the increased risks of gastroparesis and its sequelae causally associated with using Ozempic.

172. Defendants were aware or should have been aware that their representations were false or misleading and/or knew that Defendants were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare community, and the general public.

173. Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic, as set forth herein.

174. Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained

therein, when making the decision to prescribe Ozempic to Plaintiff.

175. Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of gastroparesis and its sequelae causally associated with Ozempic, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate information regarding safety of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

176. Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic.

177. Plaintiff reasonably relied on the false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

178. Had Plaintiff been told of the increased risk of gastroparesis and its sequelae causally associated with Ozempic, Plaintiff would not have used Ozempic and/or suffered gastroparesis and its sequelae.

179. Defendants' misrepresentations and omissions of material facts amount to willful, wanton, and/or reckless conduct.

180. As a direct and proximate result of the above stated false representations and/or omissions as described herein,

Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

181. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1. Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;
2. Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in

an amount sufficient to punish Defendants and deter future similar conduct;

3. Awarding Plaintiff, the costs of these proceedings; and

4. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

/s/ *Trent B. Miracle*
Flint Cooper Cohn Thompson & Miracle
222 E. Park St., Suite 500
Edwardsville, IL 62025
Phone: (618) 288-4777
tmiracle@flintcooper.com
**Attorneys for Plaintiff**